UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN KENDRICK,

        Petitioner,

v.                                                              CASE NO. 5:10-cv-14418
                                                                HONORABLE JOHN CORBETT O'MEARA
LLOYD RAPELJE,

        Respondent.

_____/

## OPINION AND ORDER
## GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT
## AND DISMISSING THIS CASE WITH PREJUDICE, BUT
## GRANTING A CERTIFICATE OF APPEALABILITY

Pending before the Court are petitioner Ryan Kendrick's habeas corpus petition

and respondent Lloyd Rapelje's Motion for Summary Judgment and Dismissal of the

habeas petition.  Respondent argues that Petitioner's claims are barred from

substantive review by Petitioner's failure to comply with the one-year statute of

limitations.  Petitioner concedes that his habeas petition is time-barred.  He urges the

Court to equitably toll the limitation period on the basis of his former attorney's inactions

and misrepresentations.

The Court has determined that the habeas petition is untimely even if the Court

were to toll the limitation period for the time that Petitioner's former attorney neglected

Petitioner's case.  Accordingly, Respondent's motion for summary judgment and

dismissal of the habeas petition is granted.  A procedural history and discussion follow.

## I.  BACKGROUND

### A.  The Conviction, Sentence, and Direct Appeal

Petitioner was charged in Genesee County, Michigan with (1) conspiracy to commit assault with intent to do great bodily harm less than murder, (2) assault with intent to do great bodily harm less than murder, and (3) first-degree murder.  The charges arose from an assault and subsequent beating of a homeless man in Burton Township, Michigan on July 20, 1999.  Petitioner was tried with two co-defendants in Genesee County Circuit Court.  On June 29, 2000, Petitioner's jury found him guilty, as charged, of:  conspiracy to commit assault with intent to do great bodily harm less than murder, Mich. Comp. Laws §§ 750.157a and 750.84; assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84; and first-degree (premeditated) murder, Mich. Comp. Laws § 750.316(1)(a).  The trial court sentenced Petitioner to life imprisonment for the murder and to concurrent terms of five to ten years for the assault and conspiracy.

In an appeal of right, Petitioner argued through counsel that (1) the trial court erred by permitting the prosecutor to admit in evidence Petitioner's statement to the police, (2) the State's destruction of the crime scene without notice to defense counsel violated Petitioner's right to due process, and (3) the trial court violated his right to due process by denying his motion to sever the murder charge from the assault charge. The Michigan Court of Appeals rejected each of these claims and affirmed Petitioner's convictions in an unpublished decision.  *See People v. Kendrick*, No. 229086 (Mich. Ct. App. Feb. 11, 2003).  Petitioner raised the same issues in the Michigan Supreme Court, which denied leave to appeal on July 28, 2003, because it was not persuaded to review

the issues.   *See People v. Kendrick*, 469 Mich. 865; 666 N.W.2d 672 (2003) (table).

Petitioner did not file a petition for the writ of certiorari in the United States Supreme

Court.

**B.  The State Collateral Appeal**

In December of 2003, Petitioner's grandmother, Sandra Kendrick, retained

attorney Jeffrey Clothier to pursue state and federal post-conviction remedies for

Petitioner.  On or about August 12, 2004, Clothier filed a motion for relief from judgment

in the trial court.[1]  The motion alleged that Petitioner was deprived of effective

assistance of trial and appellate counsel and that he was denied his right to counsel

when the trial court declined to adjourn the trial following substitution of trial counsel.

On April 6, 2005, the trial court denied Petitioner's motion.  Clothier then filed an

application for leave to appeal in the Michigan Court of Appeals.  On May 10, 2005, the

Court of Appeals notified Clothier that his application was defective because it did not

conform to Michigan Court Rule 7. 212(C) and because another set of transcripts was

needed.  The Court of Appeals afforded Clothier twenty-one days to cure the defects in

his application.

Clothier did not cure the defects, and on June 27, 2005, the Michigan Court of

Appeals dismissed his application without prejudice for failure to pursue the case in

conformity with the Michigan Court Rules.  *See People v. Kendrick*, No. 262298 (Mich.

Ct. App. June 27, 2005) (unpublished).  Clothier did not seek reinstatement in the

Michigan Court of Appeals, and he did not appeal to the Michigan Supreme Court.  Nor

---

[1] The motion was signed on August 10, 2004, but Petitioner alleges that it was filed on August 12, 2004.

did he file a federal habeas corpus petition in Petitioner's behalf.

## C.  The Ensuing Years, the Habeas Corpus Petition, and the Responsive Pleading

Clothier did not immediately inform Petitioner of the dismissal of his appeal, and in the years that followed the dismissal, Petitioner and Ms. Kendrick made numerous attempts to communicate with Clothier and to learn the status of Petitioner's case.  In September of 2008, Ms. Kendrick filed a complaint against Clothier with the Michigan Attorney Grievance Commission.  In 2009, while the complaint was still pending, Ms. Kendrick consulted attorney John Lazar, who informed her that the deadline for filing a habeas corpus petition had expired.  The Attorney Grievance Commission subsequently admonished Clothier, and in April of 2010, Ms. Kendrick hired the firm Leonard Kruse, P.C., to file a state court complaint against Clothier.  In June of 2010 or shortly thereafter, Ms. Kendrick retained the same firm to draft a federal habeas corpus petition in Petitioner's behalf.  Counsel for Petitioner states that, due to the complexity of the case and the length of Petitioner's trial, she was unable to file the petition for several months.

The Clerk of this Court received the petition and filed it on November 4, 2010. Petitioner argues in his supporting brief that:  (1) the trial court erred by allowing his statement to the police to be admitted in evidence; (2) his right to due process was violated by the destruction of the crime scene before defense counsel or an investigator could examine it; (3) trial counsel was ineffective; and (4) his right to effective assistance of counsel was violated by the trial court's refusal to afford substitute counsel adequate time to prepare for trial.

Respondent argues in his motion for summary judgment and dismissal that the

habeas petition is barred by the one-year statute of limitations for habeas petitions.

Petitioner replies that, although the petition was not timely filed, the Court should

equitably toll the limitation period due to attorney Clothier's malfeasance.

## II.  DISCUSSION

### A.  The Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) established

a one-year period of limitation for state prisoners to file their federal habeas corpus

petitions.  *Wall v. Kholi,* __ U.S. __, __, 131 S. Ct. 1278, 1283 (2011) (citing 28 U.S.C. §

2244(d)(1)).  The period of limitation runs from the latest of four specified dates:

> **(A)** the date on which the judgment became final by the conclusion
> of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application
> created by State action in violation of the Constitution or laws of the United
> States is removed, if the applicant was prevented from filing by such State
> action;
>
> **(C)** the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly recognized
> by the Supreme Court and made retroactively applicable to cases on
> collateral review; or
>
> **(D)** the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due
> diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).  The limitation period is tolled "during the pendency of a

'properly filed application for State post-conviction or other collateral review with respect

to the pertinent judgment or claim.'" *Kholi*, 131 S. Ct. at 1283 (quoting 28 U.S.C. §

2244(d)(2)).

### B.  Application

Petitioner is not relying on a new and retroactive constitutional right or on newly discovered facts, and he is not suggesting that an impediment created by state action prevented him from filing his habeas petition earlier.  *Cf.* 28 U.S.C. §§ 2244(d)(1)(B-D).  Consequently, the statute of limitations began to run when Petitioner's convictions "became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  "Direct review," for purposes of subsection 2244(d)(1)(A), concludes when the availability of direct appeal to the state courts and to the United States Supreme Court has been exhausted.  *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009).

A petition for writ of certiorari to review a judgment entered by a state's highest court must be filed in the United States Supreme Court within ninety days after entry of the judgment.  Sup. Ct. R. 13.1.  For petitioners who do not pursue direct review to the United States Supreme Court, "the judgment becomes final at the 'expiration of the time for seeking such review' – when the time for pursuing direct review in [the Supreme] Court, or in state court, expires."  *Gonzalez v. Thaler*, __ U.S. __, __, 132 S. Ct. 641, 653-54 (2012).

Petitioner appealed to the Michigan Court of Appeals and to the Michigan Supreme Court on direct review of his convictions.  He did not apply for a writ of certiorari in the United States Supreme Court after the Michigan Supreme Court denied leave to appeal on July 28, 2003.  Therefore, his convictions became final ninety days later on October 26, 2003, when the deadline expired for seeking a writ of certiorari in the United States Supreme Court.  *Id.* at 653-43.

The one-year period of limitation began to run on October 27, 2003.  It ran for

290 days, that is, until August 12, 2004, when attorney Clothier filed the motion for relief from judgment in the trial court.  The limitation period was tolled during the entire time that the motion was under consideration in state court, that is, from August 12, 2004, to June 27, 2005, when the Michigan Court of Appeals dismissed the application for leave to appeal as defective.  28 U.S.C. § 2244(d)(2); *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002).  The parties agree that the statute of limitations resumed running on June 28, 2005, and that the limitation period expired roughly seventy-five days later on or about September 10, 2005.  Petitioner filed his habeas corpus petition more than five years later on November 4, 2010.  The petition is untimely, absent equitable tolling.

## C.  Equitable Tolling

### 1.  Clearly Established Federal Law

The statute of limitations in habeas cases is not jurisdictional.  *Day v. McDonough*, 547 U.S. 198, 205 (2006).  It "is subject to equitable tolling in appropriate cases."  *Holland v. Florida*, __ U.S. __, __, 130 S. Ct. 2549, 2560 (2010).  But "a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Id*. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749-50 (6th Cir. 2011) (adopting *Holland's* two-part test for determining whether a habeas petitioner is entitled to equitable tolling).  It is not necessary to show "maximum feasible diligence" to satisfy the first prong of this test.  Instead, "[t]he diligence required for equitable tolling purposes is reasonable diligence . . . ."  *Holland*, 130 S. Ct. at 2565 (quotation marks and citations omitted).

To satisfy the second prong of the *Holland* test, a habeas petitioner must demonstrate that extraordinary circumstances prevented him from filing a timely petition. Petitioner claims that attorney Clothier's failure to conduct basic legal research and his misrepresentations about the law and status of Petitioner's case satisfies the extraordinary-circumstances requirement.

The Supreme Court stated in *Coleman v. Thompson*, 501 U.S. 722, 752 (1991), that

> [t]here is no constitutional right to an attorney in state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987); *Murray v. .Giarratano*, 492 U.S. 1, 109 S. Ct. 2765, 106 L. Ed. 2d 1 (1989) (applying the rule to capital cases). Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. *See Wainwright v. Torna*, 455 U.S. 586, 102 S. Ct. 1300, 71 L. Ed. 2d 475 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance).

In *Holland*, however, the Supreme Court stated that, while a garden variety claim of attorney negligence does not warrant equitable tolling, "far more serious instances of attorney misconduct" may constitute extraordinary circumstances justifying equitable tolling of the habeas statute of limitations. *Holland,* 130 S. Ct. at 2564; *see also Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (explaining that "egregious cases involving an attorney's failure to satisfy professional standards of care may constitute extraordinary circumstances" warranting equitable tolling). And in a case decided earlier this year, the Supreme Court concluded that post-conviction attorneys who abandoned the petitioner's case without notice, substitution of counsel, or leave of court were "cause" for the petitioner's untimely appeal in state court. *See Maples v. Thomas*, __ U.S. __, 132 S. Ct. 912 (2012).

The Supreme Court stated in *Maples* that the requisite "cause" for the petitioner's state procedural default of failing to file a timely appeal in state court had been shown because the petitioner was abandoned by counsel during critical post-conviction proceedings and because he lacked notice of the need to protect himself by acting *pro se*. The Supreme Court explained that "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause,'" for a failure to comply with a state procedural rule, but that "[a] markedly different situation is presented . . . when an attorney abandons his client without notice, and thereby occasions the default." *Id*. at 922. The Court went on to say that, "a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him." *Id*. at 924.[2]

## 2. Attorney Clothier's Actions and Inactions

Post-conviction attorney Jeffrey Clothier initially pursued Petitioner's case in a timely manner. After Petitioner's convictions became final and more than two months before the federal statute of limitations expired, he filed a motion for relief from judgment in Petitioner's behalf. There was no time limit under state law for filing the post-conviction motion, and the filing of the motion tolled the federal statute of limitations. Clothier's subsequent application for leave to appeal the trial court's denial of the motion

---

[2] Although *Holland* "involved tolling of a federal time bar, while *Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed.2d 640 (1991), concerned cause for excusing a procedural default in state court," the Supreme Court saw "no reason . . . why the distinction between attorney negligence and attorney abandonment should not hold in both contexts." *Maples*, 132 S. Ct. at 923 n.7.

for relief from judgment also was timely.

Clothier began to neglect Petitioner's case when he failed to cure the defects in his application for leave to appeal.  And, after the Court of Appeals dismissed Petitioner's case without prejudice on June 27, 2005, Clothier did not attempt to have the case reinstated.  Nor did he appeal to the Michigan Supreme Court or file a federal habeas corpus petition.

In addition to these omissions, Clothier failed to give Petitioner timely and accurate information about his appellate case.  He waited until July 14, 2006 (over a year after the dismissal of the appeal) to inform Petitioner that his case had been dismissed.  And he did not admit that the appeal had been dismissed for failure to conform to the Michigan Court Rules; instead, he stated that the Court of Appeals had denied the application and that he was in the process of re-filing an application in the Court of Appeals or of applying to the Michigan Supreme Court.

Petitioner responded to Clothier's letter on August 8, 2006, and expressed surprise that the Court of Appeals had entered an order in his case.  Although Petitioner asked Clothier to respond to his letter, he received no response.  Petitioner wrote to Clothier again in January of 2007 and asked Clothier whether he had finished his brief and whether there was a deadline for filing the brief in the Michigan Supreme Court.  On January 22, 2007, Clothier responded to Petitioner by letter, stating that he would try to complete the brief that week.  By then, it was too late to file a brief in either the Michigan Court of Appeals or in the Michigan Supreme Court.[3]

---

[3] At the time, a defendant had one year in which to appeal the denial of a motion for relief from judgment in the Michigan Court of Appeals, Mich. Ct. R. 6.509(A), and

Clothier's last letter to Petitioner is dated September 26, 2007.  In that letter, he stated that he had sent a rough draft of his appellate brief to Petitioner and to Sandra Kendrick so that they could review the brief before he submitted it to the Court of Appeals.  Clothier never did file an appellate brief in the Michigan Court of Appeals or in the Michigan Supreme Court, and he did not pursue any federal remedies in Petitioner's behalf, despite calls and letters from Petitioner and Sandra Kendrick during 2007 and 2008.

By 2008, the attorney-client situation had deteriorated to the point that Sandra Kendrick complained to the Michigan Attorney Grievance Commission about Clothier.  In Clothier's response to the complaint, he admitted that there had been a lack of progress at times, and that Petitioner's appeal "went on the back burner" after the Michigan Court of Appeals dismissed his appeal for failure to provide transcripts.  On November 18, 2009, the Commission admonished Clothier because he undertook a criminal appeal even though he was not competent to do so.  The Commission also determined that Clothier neglected Petitioner's case and that he failed to accurately communicate with Petitioner and Sandra Kendrick regarding Petitioner's criminal appeal.  The Commission stated that Clothier had violated several rules of professional conduct.

### 3. Analysis

The facts, as summarized above, indicate that Clothier committed serious attorney misconduct.  He neglected to cure a defect in his application for leave to appeal, and he apparently performed no legal research to determine the applicable deadlines in

---

fifty-six days to appeal to the Michigan Supreme Court from a decision of the Michigan Court of Appeals, Mich. Ct. R. 7.302(C)(2).

state and federal court.  He also failed to honestly and promptly communicate with

Petitioner regarding the status of his case, and he violated the rules of professional

conduct.  His actions and inactions can be deemed "extraordinary" and sufficiently

egregious to equitably toll the limitation period for at least some of the time.  *Cf. United

States v. Martin*, 408 F.3d 1089, 1094-95 (8th Cir. 2005); *Baldayaque v. United States*,

338 F.3d 145, 152-53 (2d Cir. 2003).  In fact, Clothier admitted during a deposition taken

in a state case on October 26, 2011, that he committed professional negligence in

Petitioner's case and that he had not been competent.  He also admitted that his

representation of Petitioner fell below the standard of care for a competent attorney and

amounted to ineffective assistance of counsel.  *See* Petitioner's supplemental brief [dkt.

#17], ex. A.

This does not mean that Petitioner's late filing is excused.  It merely means that

Clothier's neglect of Petitioner's case was cause for some of the delay in filing the

habeas petition.  The Court believes for the following reasons that the habeas petition is

time-barred even if the Court tolled the limitation period for the time during which Clothier

was negligent.

First, the period of limitation ran for more than nine months after Petitioner's

convictions became final on October 26, 2003, and before Clothier filed Petitioner's

motion for relief from judgment on August 12, 2004.  There was no time limit for filing the

motion, and Clothier's subsequent application for leave to appeal the trial court's denial of

the motion on April 27, 2005, was timely.  Furthermore, the statute of limitations was

tolled while Petitioner's post-conviction motion was under review in state court.  28 U.S.C.

§ 2244(d)(2); *Saffold*, 536 U.S. at 219-20.  Consequently, Clothier's representation of

Petitioner up to June 27, 2005, did not amount to egregious attorney misconduct warranting equitable tolling of the limitation period. As of June 27, 2005, Clothier still had about two and a half months in which he could have filed a habeas corpus petition in federal court.

Second, Clothier was not responsible for the entire five-year delay that followed the dismissal of Petitioner's post-collateral appeal on June 27, 2005. Petitioner alleges that Clothier returned his case file to him in the spring of 2009, and by late April of 2009, Sandra Kendrick had consulted attorney John Lazar, who informed her that the federal statute of limitations had expired. Unlike the habeas petitioner in *Holland*, Petitioner did not immediately file a *pro se* habeas corpus petition in federal court.

Petitioner also did not file a federal habeas corpus petition in April of 2010, when Ms. Kendrick hired Leonard Kruse, P.C., to file a lawsuit against Clothier. Nor did Petitioner file a habeas petition shortly after June 14, 2010, when he retained Leonard Kruse, P.C., for the specific purpose of filing his habeas corpus petition. Petitioner waited until November 4, 2010, to file the habeas petition. This was a year and a half after Clothier apparently stopped representing Petitioner and other attorneys began to assist Petitioner.

Petitioner claims that was not aware of the doctrine of equitable tolling until June 14, 2010, when the Supreme Court issued its decision in *Holland.* Petitioner's ignorance of the law, however, "is not sufficient to warrant equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 743 n. 7 (6th Cir. 2011) (quoting *Griffin v. Rogers*, 399 F.3d 626, 637 (6th Cir. 2005) (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)). Moreover, the United States Court of Appeals for the Sixth Circuit determined as early as 2003 that the statute of

limitations for state prisoners is subject to equitable tolling.  *See McClendon v. Sherman*,

329 F.3d 490, 492 (6th Cir. 2003).

To summarize, the statute of limitations ran for more than one year even if the

limitation period were tolled for Clothier's alleged malfeasance.  The limitation period ran

from the date that Petitioner's convictions became final (October 27, 2003) to the date

that Clothier filed the motion for relief from judgment (August 12, 2004).  This period of

time was about nine a half months.  The limitation period also ran from April of 2009 when

Petitioner acquired the record and apparently retained other counsel until November 4,

2010, when Petitioner filed his habeas petition.  This block of time was about a year and a

half.  Consequently, even if the Court tolled the limitation period from June 27, 2005,

when Clothier admittedly "dropped the ball" to the spring of 2009 when Clothier released

the file and Petitioner acquired new counsel, the limitation period ran for more than one

year.

The same conclusion is true if the Court tolled the limitation period from June 27,

2005, until mid-June or early July of 2010 when the Supreme Court decided *Holland* and

Petitioner allegedly retained Leonard Kruse, P.C., to file his habeas petition.  Under that

scenario, the limitation period ran thirteen and a half to fourteen months:  nine and a half

months before Clothier filed the motion for relief from judgment and four to four and a half

months after *Holland* was decided and Petitioner retained his current attorney

### III.  CONCLUSION

Petitioner filed his habeas petition years after his convictions became final, and

even if the Court equitably tolled the limitation period for the time during which his former

attorney neglected his case, the limitation period ran more than one year.  Accordingly,

Respondent's motion for summary judgment and dismissal of the habeas petition [dkt. #14] is **GRANTED**, and the habeas petition [dkt. #1, 2, and 9] is **DISMISSED** with prejudice for failure to comply with the one-year statute of limitations.  The Court nevertheless **GRANTS** a certificate of appealability because reasonable jurists could debate whether the Court's procedural ruling is correct and whether the petition states a valid claim of the denial of a constitutional right.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

> s/John Corbett O'Meara
> United States District Judge

Date:  February 21, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, February 21, 2012, using the ECF system.

> s/William Barkholz
> Case Manager